**t FILED**

JUN 1 3 2007
Jun 13 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VATCHAREE PRONSIVAKULCHAI ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | |
| ) | **07CV3320** |
| ALBERTO R. GONZALES, Attorney ) | **JUDGE LEFKOW** |
| General of the United States; ) | **MAG. JUDGE BROWN** |
| JOHN P. TORRES, Acting Director of the ) | |
| Office of Detention and Removal of ) | |
| United States Immigration and Custom ) | |
| Enforcement; DEBORAH ACHIM, ) | |
| Field Office Director, Immigration and ) | |
| Custom Enforcement; GLEN TRIVELINE, ) | |
| Supervising Detention Officer, Detention ) | |
| and Removal; TOM SVOBODA, ) | |
| Corrections Chief of the McHenry County ) | |
| Correctional Facilities, ) | |
| ) | |
| Respondents. ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

Now comes the Petitioner, VATCHAREE PRONSIVAKULCHAI, by and through her

attorneys, AZULAY, HORN & SEIDEN, LLC and Matt Sullivan of WINSTON AND SALEM,

LLC and respectfully petitions this Honorable Court for a writ of habeas corpus to enter an order

granting him released from custody. In support of this Petition, Vatcharee Pronsivakulchai

alleges as follows:

### *Preliminary Statement*

Vatcharee Pronsivakulchai ("Pronsivakulchai ") respectfully petitions this Court for a

Writ of Habeas Corpus ordering her release and the Department of Homeland Security ("DHS")

and the Immigration and Customs Enforcement ("ICE") to release her from custody.

1

Pronsivakulchai is currently in the custody of ICE and DHS while awaiting the resolution of her removal proceedings. Pronsivakulchai alleges that her detention is not authorized by statute, and violates her due process rights.

## *Jurisdiction*

1.      Pronsivakulchai, presently in the custody of Respondents under color of law, petitions this Court for a writ of *habeas corpus*, releasing her from custody.

2.      This Court has jurisdiction pursuant to the general grant of habeas authority conferred on the District Courts at 28 U.S.C. § 2241, the All Writs Act at 28 U.S.C. §1651, and Art. 1. §.9, cl. 2 of the United States Constitution

3.      In cases "that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006); *see also Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003) (holding that any jurisdictional limitations imposed by the IIRIRA "did not extend to the habeas power of federal courts, in order to avoid the constitutional issue of whether or not such a limitation would violate the Suspension Clause of the Constitution.").

4.      This action arises under the Due Process Clause of the Fifth Amendment of the United States Constitution, the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. §§ 1101, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*

5.      This Court may grant relief under the habeas corpus statute, 28 U.S.C. §2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, and the All Writs Act, 28 U.S.C. §1651.

6.     This Court has the power to order the immediate release of the Pronsivakulchai if it finds the detention unlawful. *Ly*, 361 F.3d at 272-73 (noting *Zadvydas* requires court supervision of the reasonableness of detentions).

7.     In the alternative, this Court could order a bail hearing in order to evaluate the reasonableness of the Government's pre-removal detention. *See Bonsol v. Perryman*, 240 F. Supp. 2d 823, 827 (N.D. Ill. 2003) (ordering individualized bond hearing as a "minimal accommodation"); *Welch v. Ashcroft*, 293 F.3d 213, 227 (4th Cir. 2002) ("The judgment merely orders a bill hearing. The DOJ was able to present, and the immigration judge was free to consider, evidence of flight risk and dangerousness at the bail hearing").

### Venue

8.     Venue is proper under 28 U.S.C. §1391(e) because Pronsivakulchai is detained within the Northern District of Illinois. *See* 28 U.S.C. §2241(d).

### Parties

9.     Petitioner, VATCHAREE PRONSIVAKULCHAI, is an individual who is currently in custody at McHenry County Correctional Facilities.

10.     Respondent, ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States.

11.     Respondent, JOHN P. TORRES, in his official capacity as Acting Director of the Office of Detention and Removal of United States Immigration and Custom Enforcement.

12.     Respondent, DEBORAH ACHIM, in her official capacity as Field Office Director, Immigration and Custom Enforcement.

13.     Respondent, GLEN TRIVELINE, in his official capacity as Supervising Detention Officer, Detention and Removal.

14.     Respondent, TOM SVOBODA, Corrections Chief of the McHenry County
Correctional Facilities.

### *Facts and Allegations*

Pronsivakulchai is an asylum-seeker from Thailand. She seeks asylum due to her past
actions in helping the Drug Enforcement Administration ("DEA") to attempt to catch Thai drug
dealers. She fears that those drug dealers will kill her if she is returned to Thailand.

Pronsivakulchai legally entered the United States and so is not an illegal alien. The
reason for the Pronsivakulchai's presence in the United States is that she was extradited from
Thailand to the United States, based on an American warrant for conspiracy to distribute
controlled substances. She therefore legally entered the United States and is not an alien seeking
admission. The U.S. Government subsequently dropped the charges which the extradition
warrant was based upon. At that point, Pronsivakulchai was turned over to ICE, which placed
her into immigration detention and began removal proceedings against her on March 26, 2004.[1]

Thus, when Pronsivakulchai was placed into removal proceedings, she filed an
application for asylum, withholding of removal, and protection under the Convention Against
Torture ("CAT"). Unfortunately, her applications were mishandled by the Immigration Court,
leading to pretermission of her applications. After an unsuccessful appeal to the Board of
Immigration Appeals, Pronsivakulchai appealed to the Seventh Circuit Court of Appeals.

On August 29, 2006, the Seventh Circuit vacated the BIA's decision, and remanded the
case for proceedings "afford[ing] a fair hearing" to Pronsivakulchai. *Pronsivakulchai*, 461 F.3d
at 909. In doing so, the Seventh Circuit held that Pronsivakulchai was not afforded a fair trial as

---

[1] Pronsivakulchai was in Thai prison for 7 months awaiting extradition, and was in federal criminal custody for over
three years. Thus, in total, she has been in custody for well over 6 years without a trial. Further, she is currently
charged with no crime. Ironically, had Pronsivakulchai been convicted of conspiracy to distribute controlled
substances, she would almost certainly have been released by now.

4

the IJ's decision was not based on "reasonable, substantial, and probative evidence." *Id.* The BIA eventually remanded the case to the Immigration Judge, on January 30, 2007. Pronsivakulchai was scheduled for her first status hearing since remand on March 2, 2007. However, the IJ had already told Pronsivakulchai's attorneys that he would be out of town on that date and asked to reschedule to April 2, 2007. It was subsequently continued to a new date.

At this point, Pronsivakulchai had been detained in civil immigration custody for over three years, awaiting a resolution of her immigration case. Nor can it be said that the delay has been caused by her; rather, it was caused by the Agency's own missteps. Now Pronsivakulchai faces another long and indefinite period of detention while watching her case wind through the bureaucracy of the immigration courts.

### *Administrative Exhaustion of Remedies*

Pronsivakulchai has formally exhausted all administrative avenues of relief. Under the Agency's regulations, Pronsivakulchai's only available avenue to seek release is to file requests for "parole" under 8 U.S.C. §1182(d)(5)(A), with the local immigration authorities. She has made several such requests. All of these attempts have proven futile. As is further discussed below, the regulations give an individual such as Pronsivakulchai no right to seek any review of those detention decisions in any court or office.

### *Petitioner's Claims*

Pronsivakulchai has been in the custody of ICE for over three years at this point. This detention is unjust, inhumane, and unsupported by the law. The statues under which the Government holds Pronsivakulchai do not authorize prolonged and indefinite detention. Under Supreme Court precedent, general detention statutes that do not explicitly provide for indefinite detention must be construed as permitting only brief and reasonable detention. As has been

5

recognized by every court of appeal to address this issue, the statutes at issue in this case, 8

U.S.C. §1225, 1226, and 8 U.S.C. §182, allow only brief and reasonable detention, because they

do not specifically authorize indefinite or prolonged detention.

Further, the prolonged and indefinite detention of Pronsivakulchai raises both substantive

and procedural due process issues, as Pronsivakulchai is being held without charge and with no

avenue of seeking relief. For these reasons, this Court should grant Pronsivakulchai's *habeas*

petition.

I.     **PRONSIVAKULCHAI'S INDEFINITE DETENTION IS UNCONSTITUTIONAL AND IS NOT AUTHORIZED UNDER 8 U.S.C. § 1226.**

### A. Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") was amended in 1996, to eliminate

the longstanding division between "deportation" cases (involving immigrants who had already

entered the United States) and "exclusion" cases (involving those seeking entry). The current

statute contains only one section governing detention of aliens, at 8 U.S.C. §1226. However, by

regulation, the Agency has created a non-statutory term, "arriving alien", and has defined it as

follows:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. §1001.1(q). It should be noted that returning Lawful Permanent Residents may also be

considered as applicants for admission, and thus, as arriving aliens. *See, Matter of Collado,* 21

I&N Dec. 1061 (BIA 1998) (returning residents for admission under 8 U.S.C. §1101(a)(13)).

6

The effects of being labeled an "arriving alien" are concentrated in the area of detention. By regulation, immigration judges do not have authority to review the custody of arriving aliens. 8 C.F.R. §1003.19(h)(2)(B) ("an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:. . . (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act"). Arriving aliens, at this point, may only seek release by making requests for parole under 8 U.S.C. §1182(d)(5)(A), which provides that the Attorney General "may. . .in his discretion parole into the United States" aliens seeking admission "for urgent humanitarian reasons or significant public benefit."

It is clear that under the Agency's regulatory definition, Pronsivakulchai is not an arriving alien. While that statute generally authorizes detention of individuals placed into removal proceedings, there is no specific authorization for indefinite or unreasonable detention, nor does that statute contain any procedural safeguards against such indefinite or unreasonable detention.

Thus, none of the potentially applicable statutes authorize the prolonged or indefinite detention of an arriving alien. In fact, these general detention statutes do not make any mention of the time period for which an alien may be held in detention.

### B. Indefinite Detention is Prohibited as Detention Periods Must be Limited to a Reasonable Time Limit.

In response to constitutional concerns raised by general detention statutes such as 8 U.S.C. §1225 (b) (2)(A), the Supreme Court has interpreted the statutes as not authorizing indefinite and unreasonable detentions. *See INS v. St. Cyr,* 533 U.S. 289, 299-300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems."); *see also Zadvydas v, Davis,* 533 U.S. 678, 699 (2001)(to avoid

7

finding that a general detention statute created obvious constitutional problems, the Court construed a general detention statute as not allowing indefinite detention).

For example, in *Zadvydas v. Davis*, the Supreme Court addressed the legality of detention of permanent legal residents who had been ordered removed under a similar general detention statute, 8 U.S.C. §1231(a)(6). *Zadvydas*, 533 U.S. 678, 693. (2001) (holding detention beyond six months not authorized by statute). She legally entered the United States based upon the extradition warrant issued by the Attorney General.

8 U.S.C. §1226, the statute generally covering immigration custody, makes no provision for indefinite detention.

> (a) Arrest, Detention, and Release.-On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on-
>
> (A) bond of at least $1,500.00 with security approved by, and containing conditions prescribed by, the Attorney General; or

The Court further held that "[a]fter a presumptively reasonable six-month detention, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Thus, in order to avoid finding that the statute created obvious constitutional problems, the Court construed the statute as not allowing indefinite detention.

Although the *Zadvydas* Court's decision only applied to the post-removal detention of admitted aliens, the scope of the holding was broadened in *Clark v. Martinez*, 543 U.S. 371, 377-79 (2005). The *Clark* Court held that *Zadvydas* applied to all categories of aliens whose detention was authorized by 8 U.S.C. §1231(a)(6) including "those removed who are inadmissible." *Id.* at 377. The Court reasoned that their interpretation of the same statute in *Zadyvdas.* was binding, and that the phrase "may be detained beyond the removal period" had to be interpreted the same way in each case encompassed by the statute. *Id.* Thus, the *Zadyvdas* holding regarding the "serious constitutional threat" posed by indefinite detention of aliens applies not only to admitted aliens, but also to non-admitted (arriving) aliens. *Id.* *See* also *Zadvydas,* 533 U.S. at 609.

Similarly, in *Demore v. Kim* 530 U.S. in a five to four decision, the Supreme Court upheld 8 U.S.C. §1226, a mandatory detention statute for criminal aliens during removal proceedings, while noting that such detentions under the statute were relatively brief. *Demore v. Kim*, 538 U.S. 510, 513 (2003). The Court's decision specifically recognized that detentions under the statute were not prolonged and indefinite- on average only 47 days to four months. *Id; see also Ly v. Hansen,* 351 F.3d 263, 271 (6th Cir. 2003) (The *Demore* Court's reasoning in the case "is under girded by reasoning relying on the fact that Kim, and persons like him, will normally have their proceedings completed within a short period of time and will actually be deported, or released.") In a concurring opinion, Justice Kennedy also noted aliens such as that in *Kim.* "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Kim*, 538 U.S. at 532.

*Kim* supra, also showed that Lower courts have also followed the reasoning enunciated by the Supreme Court in *Zadvydas* and its progeny. In *Nadarajah v. Gonzales.* 443 F.3d 1069, 1078

(9th Cir. 2006), the Ninth Circuit held that the very statutes at issue in this case, 8 U.S.C.

§§1225, 1182, do not authorize indefinite detention of arriving aliens. Petitioner in *Nadarajah*,

was suspected of terrorism, and was stopped at the United States border without proper

documentation to enter the country. *Id.* at 1073. The Petitioner was detained for over four years

during his removal proceedings. *Id.* Following the logic and rationale of decisions such as

*Zadvydas*, the Ninth Circuit held:

> [T]he Government does not possess the authority under the general
> detention statutes to hold Nadarajah, or any other alien who is similarly
> situated indefinitely. Rather, consistent with the construction given by the
> Supreme Court to similar statutes, the detention must be for a reasonable
> period, and only if there is no significant likelihood of removal in the
> reasonably foreseeable future.

*Id.* at 1079-80; *see also Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003) (holding that

"deportable aliens may not be indefinitely detained without a Government showing of a 'strong

special justification' constituting more than a threat to the community, that overbalances the

alien's liberty interest", and finding that detaining an alien for one-and-a-half years while in

removal proceedings, "was unreasonable"). See also, *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.

2005) (detention of 2 and a half years unreasonable).

Moreover, Congress' specific authorization for extended detention in that Act is

suggestive by comparison with the statutes at issue herein. There is no clear authorization for the

immigration authorities to hold individuals like Pronsivakulchai, for extended periods of time,

and without any administrative or judicial review. Ignoring the omission of explicit

authorization of prolonged detention in the general statues such as at issue here, would render

Congress' unambiguous authorization of prolonged detention in various statutes in Acts such as

the Patriot Act meaningless. *See United States v. Powers*, 307 U.S. 214, 217 (1939) ("There is a

presumption against a construction which would render a statute ineffective or inefficient.").

Statutes such as the Patriot Act require that the Attorney General "certify" the case before detention begins, and also require periodic reviews of the certification. Here, no such procedural safeguard exists. Allowing for the indefinite detention of arriving aliens such as Pronsivakulchai, without safeguards, would ensure that asylum-seekers not convicted of any crimes would have less protections than terrorists.

This Court should adhere to the Ninth Circuit decision in *Nadarajah*, and hold that the "Government does not possess the authority under [8 U.S.C. §§ 1225, 1182] to hold [Pronsivakulchai], or any other alien who is similarly situated, indefinitely." *Nadarajah*, 443 F.3d at 1079-80. Such a decision would be in line with Supreme Court rationale, provide deference to Congressional authority, and comport with the cannons of constitutional avoidance which require the Court to interpret statutes so as to avoid constitutional problems.

C. **Interpreting 8 U.S.C. § 1226 to Permit the Indefinite Detention of Arriving Aliens Would Raise Severe Doubts as to its Constitutionality As The Same Statute Also Applies to Permanent Residents.**

Pronsivakulchai submits that the Government's interpretation of these statutes would raise such doubts, and thus, that her interpretation of the statute is to be preferred. "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statue is fairly possible, we are obligated to construe the statute to avoid such problems." *INS v. St. Cyr.*, 533 U.S. 289, 299-300 (2001).

As set forth in Section II, Pronsivakulchai's detention violates her constitutional rights. However, as will be explained, Pronsivakulchai's status as an unadmitted alien adds an unnecessary level of constitutional complexity. In interpreting the statute so as to avoid constitutional problems, this Court need not address Pronsivakulchai's status as an unadmitted

alien because the statutory language at issue also applies to certain permanent legal residents and must be interpreted consistently.

The detention provisions of 8 U.S.C. §1225, §1226(a) and §1182(d) apply to certain legal permanent residents (*see, Matter of Collado,* 21 I&N Dec. 1061 (BIA 1998)), as well as asylum-seekers like Pronsivakulchai. The standardless, indefinite detention of permanent residents would, at a minimum, raise significant constitutional problems. *See Zadvydas,* 533 U.S. at 696 (concluding that permitting the indefinite detention of resident aliens would present "serious" constitutional concerns); *Jean-Baptiste v. Reno,* 144 F.3d 212, 219 (2d Cir. 1998) ("the Supreme Court has ruled that aliens who have established permanent residency in this country are entitled to assert their constitutional rights.")

In *Clark v. Martinez,* the Supreme Court considered this precise circumstance- statutory language applicable to both admitted and excluded aliens. In *Zadvydas,* the Court had already found that the statute at issue could not be read to authorize indefinite detention of admitted aliens because this would raise serious constitutional concerns. *See Zadvydas,* 533 U.S. at 690 ("[a] statute permitting indefinite detention of [a legal resident alien] would raise a serious constitutional problem").

Because the Agency's interpretation of these particular statutory provisions is constitutionally problematic as applied to permanent resident aliens, who have clear and full due process rights (*See, e.g., Zadvydas,* 533 U.S. at 690), it is necessary for this court to determine whether indefinite detention of an alien such as Pronsivakulchai would raise serious constitutional issues. If 8 U.S.C. §1225 is interpreted as allowing the indefinite detention of inadmissible arriving aliens such as Pronsivakulchai, the same statute would have to be interpreted as allowing the indefinite detention of permanent legal residents as well. Because the

Supreme Court has stated that "[a] statute permitting indefinite detention of [a legal resident alien] would raise a serious constitutional problem," *Zadvydas,* 533 U.S. at 690, the statutes at issue should not be interpreted to permit indefinite or unreasonable detention.

Finally, as set forth in Section II, indefinite detention under the circumstances of this case would be unconstitutional as applied to Pronsivakulchai.

## II. PRONSIVAKULCHAI'S DETENTION IS UNCONSTITUTIONAL UNDER THE DUE PROCESS CLAUSE WHERE THERE ARE NO STRICT PROCEDURAL SAFEGUARDS AND NO SPECIAL JUSTIFICATION FOR THE DETENTION.

Pronsivakulchai is protected by the Due Process Clause of the United States Constitution. *Rosales-Garcia v. Holland,* 322 F .3d 386, 414 (6th Cir. 2003). A long line of Supreme Court cases regarding prolonged detention in the civil context require that civil detention be accomplished only pursuant to strict procedural safeguards, and for weighty reasons. *United States v. Salerno,* 481 U.S. 739 (1987) (stressing, *inter alia,* presence of judicial safeguards in upholding pretrial detention).; *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997) (special justification for detention must outweigh "the individual's constitutionally protected interest in avoiding physical restraint"); *Foucha v. Louisiana,* 504 U.S. 71, 90 (1992) ("Freedom from imprisonment. . .lies at the heart of the liberty [the Due Process clause] protects").

Substantive due process prohibits the Government from infringing on this fundamental interest, regardless of the process provided unless the infringement is narrowly tailored to serve a compelling Government interest. *Reno v. Flores,* 507 U.S. 292, 301, 302 (1992). Furthermore, in the civil context, prolonged and indefinite detention has only been upheld in circumstances that include a "special justification' such as a "mentally ill alien". *See Zadvydas,* 533 U.S. at 690. Even in those circumstances, the Supreme Court has held that "strict procedural safeguards" are

required prior to the imposition of civil detention, and that the detention be limited to "particularly dangerous individuals." *Hendricks*, 521 U.S. at 368.

Here there is no "special justification" and nor are there any "strict procedural safeguards" to protect Pronsivakulchai. Pronsivakulchai is not a threat to the country nor is she suffering from a "harmful threatening illness." *Zadvydas*, 533 U.S. at 690. Pronsivakulchai has never had a single criminal charge substantiated against her. In fact, Pronsivakulchai has risked her life by incurring the wrath of gang members in Thailand in order to assist the DEA and the U.S. Attorney's office. As the Seventh Circuit Court noted, "Pronsivakulchai's reward for helping the DEA is to send her back to the Thai prison, where the gang members and drug traffickers that she informed on still reside." *Pronsivakulchai*, 461 F.3d at 909. Pronsivakulchai fears for her life if forced back to Thailand. Pronsivakulchai has also been heavily involved in the asylum process, and in light of the sheer lack of evidence presented by the Government in the immigration case and the Seventh Circuit decision overturning the IJ and BIA decision, Pronsivakulchai will likely prevail in the immigration court. *See* U.S.C. §1231(b)(3)(a) (Withholding of removal is mandatory if the applicant meets her burden of proof regarding the likelihood of future torture on application for relief under the Convention Against Torture). All these factors evidence the improbability of any flight on the part of Pronsivakulchai, and show the lack of any "special justification" supporting the detention of Pronsivakulchai. Since Pronsivakulchai has no incentive to flee, the Government's interest in holding her pending proceedings are not compelling, and further detention would be nothing more than impermissible punishment clearly in excess of the regulatory goal Congress sought to achieve. *Salerno*, 481 U.S. at 747.

14

Additionally, during the three years that she has been detained by ICE, Pronsivakulchai has had no procedural protections to safeguard her constitutional rights. The sole discretion to award parole in this situation is granted to the Attorney General, who may parole into the country arriving aliens "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(d)(5)(A). This is not an adequate procedural safeguard against arbitrary and prolonged detention. *Hendricks,* 521 U.S. at 368 (requiring "strong procedural safeguards" prior to the imposition of civil detention). The Government has not held hearings, presented evidence, or in any way made a showing justifying its detention of Pronsivakulchai. *See Salerno,* 481 U.S. at 747 (pretrial detention procedures for criminal suspects were not excessive in part because the arrested suspects were entitled to prompt detention hearings and possible release). As a result of this absence of constitutional safeguards, Pronsivakulchai has been in custody of ICE and DHS for three years, without an opportunity to show why she should not be deprived of her liberty.[2] Because Pronsivakulchai has currently been detained for nearly three years, and because there is no likelihood of her fleeing, and because the Government would incur few, if any, additional administrative and financial burdens by providing proper procedural protections to Pronsivakulchai, this Court should grant Pronsivakulchai's writ of habeas corpus, and order her release. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) (The procedural process due is determined by balancing (1) the private interest affected by the Government; (2) the risk the Government will erroneously deprive her of that interest and the value of additional or substitute procedural safeguards to prevent that from happening; and (3) the Government's interest, including the fiscal and administrative burdens the additional procedural safeguards would

---

[2] 8 C.F.R. § 103.3(a)(1)(i) requires the ICE Field Office Director make a decision to reject a parole request in writing. The Government has failed to satisfy even this minimum requirement. To date, the Government has not provided a decision in writing denying her parole.

impose"). The indefinite, prolonged, and unmonitored detention of Pronsivakulchai is
unconstitutional.

Nor is Pronsivakulchai's argument in conflict with Circuit precedent. The Seventh
Circuit has twice addressed constitutional arguments by individuals detained by the immigration
service, which was refusing them parole. *Hoyte-Mesa v. Ashcroft,* 272 F.3d 989 (7th Cir. 2001);
*Carrera-Valdez v. Perryman,* 211 F.3d 1046 (7th Cir. 2000). In both of these cases, the
Petitioners had long criminal records, and had been convicted in this country of serious and
dangerous acts. Thus, in *Hoyte-Mesa,* the Court upheld extended detention against a Due
Process challenge, because "[h]is breach of [parole release] conditions is sufficient to authorize
his current detention." *Hoyte-Mesa,* 272 F.3d at 991. Similarly, in *Carrera-Valdez,* the Court
specifically noted the potential procedural infirmities with the Agency's parole process, and
limited its holding to criminal cases: "we therefore need not determine what procedures are
called for when the excludable alien has not been convicted of a crime following his arrival in
the United States." *Carrera-Valdez v. Perryman,* 211 F.3d 1046, 1048 (7th Cir. 2000). Both of
those decisions preceded the 2005 *Clark v. Martinez* decision which broadened *Zadvydas*'s
prohibition against indefinite detention of inadmissible aliens. *Clark,* 543 U.S. at 377-79;
*Zadvydas,* 533 U.S. at 690 ("Freedom from imprisonment- from Government custody, detention,
or other forms of physical restraint- lies at the heart of the liberty that [the Due Process] Clause
protects.")

Pronsivakulchai would submit that her case squarely presents the question that the
*Carrera-Valdez* Court declined to address: namely, "what procedures are called for when the
excludable alien has not been convicted of a crime following his arrival in the United States." If
the Court were to conclude that the statute clearly authorized such detention, it would be

necessary for the Court to consider the outer constitutional procedural limitations on the detention of arriving aliens such as Pronsivakulchai.

### A. Pronsivakulchai's Detention For More Than One-Thousand Days is Unreasonable Where There is No Significant Likelihood She Can be Removed in the Reasonably Foreseeable Future.

Pronsivakulchai has been in the custody of ICE for over three years. This period of detention does not include the three years Pronsivakulchai was held in Federal custody without a charge being substantiated against her, or the seven months she was held in Thai prison awaiting extradition.[3] By no stretch of imagination can this period of detention be considered brief and reasonable. *Demore v. Kim,* supra. Whether compared to the six month detention period found to be prolonged and problematic in *Zadvydas*, or the one and a half year detention period found unauthorized by the Sixth Circuit in *Ly*, Pronsivakulchai's ordeal is striking in its unreasonableness and prolonged nature. In the pre-removal context, the Supreme Court recognized the period of detention of the aliens was relatively brief- on average only 47 days to four months. *Demore v. Kim*, 538 U.S. 510, 513 (2003). A longer detention, and certainly as in this case, a detention lasting more than 1,000 days (if only the period of time she has been detained by ICE is considered) exceeds the level of indefinite detention that the Supreme Court stated "would raise a serious constitutional problem." *Zadvydas*, 533 U.S. 678, 690. (2001); *see also Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) (detention of two and a half years unreasonable).

In addition, there is no "significant likelihood" that Pronsivakulchai can be "removed" in the reasonably foreseeable future" *Id.* at 701. Pronsivakulchai's immigration case is currently before the Immigration Court after being remanded by the Seventh Circuit and the BIA.

---

[3] In 2001, the average federal drug trafficking sentence was 72.7 months. U.S. SENTENCING COMMISSION, 2001 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, at 30, tbl. 14. Thus, the Pronsivakulchai has been detained for nearly the same amount of time as she would have been sentenced to under a drug trafficking violation.

Pronsivakulchai's renewed removal proceedings before the IJ have been continued several times by the IJ at the request of the Government. Considering that the original proceedings took over two and half years to reach this point, and considering the strength of Pronsivakulchai's Asylum and CAT claims, especially in light of the Seventh Circuit's acknowledgement of Pronsivakulchai's fear, there is no "significant likelihood" that Pronsivakulchai can be removed in the "reasonably foreseeable future."

## III.    **POTENTIAL REMEDIES**

Pronsivakulchai seeks a habeas order granting her immediate release. At this point, given the extraordinarily long period of time which Pronsivakulchai has already spent in immigration custody, she seeks a habeas grant which would order her immediate release. The most relevant facts are clear from the record: Pronsivakulchai has never been convicted of any unlawful act; she has been civilly detained by the immigration authorities for over three years, while her case has been pending; her case remains pending, and will likely remain pending for many months or years; and Pronsivakulchai has a significant likelihood of prevailing in her immigration proceedings. Given those facts, Pronsivakulchai submits that the statute clearly does not permit her continued detention. If the Court becomes convinced that the statute does not permit her detention, remand to the Agency would serve little purpose.

If the Court concludes that the Statute does not permit detention in the absence of significant procedural protections, the Court might order release unless the Agency created an appropriate regulatory scheme within a specified time period. In that situation, the Agency would be able to choose between creating procedures for individuals in the circumstance of Pronsivakulchai, or releasing her.

## CONCLUSION

For the foregoing reasons, Petitioner, VATCHAREE PRONSIVAKULCHAI respectfully requests this Court assume jurisdiction over this matter, issue a writ of habeas corpus directing Respondents to release Pronsivakulchai from their custody, and issue all other relief as this Court deems just and proper and for legal fees.

Dated: June 12, 2007                              Respectfully submitted,

Stanley J. Horn
Azulay, Horn & Seiden, LLC
Attorneys for the Petitioner
205 N. Michigan Avenue 40th Floor
Chicago, Illinois 60601
Telephone Number: (312) 832 9200

19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VATCHAREE PRONSIVAKULCHAI )<br><br>Petitioner, )<br>vs. )<br><br>ALBERTO R. GONZALES, Attorney )<br>General of the United States; )<br>JOHN P. TORRES, Acting Director of the )<br>Office of Detention and Removal of )<br>United States Immigration and Custom )<br>Enforcement; DEBORAH ACHIM, )<br>Field Office Director, Immigration and )<br>Custom Enforcement; GLEN TRIVELINE, )<br>Supervising Detention Officer, Detention )<br>and Removal; TOM SVOBODA, )<br>Corrections Chief of the McHenry County )<br>Correctional Facilities, )<br><br>Respondents. )<br> ) | **07CV3320<br>JUDGE LEFKOW<br>MAG. JUDGE BROWN**<br><br><br>**FILED**<br><br>JUN 1 3 2007<br><br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## NOTICE OF FILING

TO:   *See Service List*

**PLEASE TAKE NOTICE** that on June 12, 2007, the Petitioner, filed with the Northern District of Illinois a Petition for Habeas Corpus, a copy of which was mailed to your office on June 12, 2007.

Stanley J. Horn
Azulay, Horn & Seiden, LLC
Attorneys for the Petitioner
205 N. Michigan Avenue 40th Floor
Chicago, Illinois 60601
Telephone Number: (312) 832 9200

**Certificate of Service**

I, Carolina Yamazaki, a non-attorney, do hereby verify that I caused a copy of the *Petition for Writ of Habeas Corpus* to be served upon the individuals identified above by placing same in the U.S. Mail, proper postage prepaid, at 205 N. Michigan Avenue, Chicago, Illinois on June 12, 2007 before the hour of 5:00pm.

_____
Carolina Yamazaki

Dated: June 12, 2007

Subscribed and Sworn to
before me this 12th day
of June, 2007.

_____
Notary Public

21

## Service List

**Alberto Gonzales**
U.S. Attorney General
10th Constitution Ave. NW
Room 5111
Washington, D.C., 20530

**John P. Torres**
Acting Director of the Office of
Detention and Removal
10 W. Congress, Suite 4000
Chicago, IL 60605

**Deborah Achim**
Field Office Director
101 W. Congress, Suite 4000
Chicago, IL 60605

**Glenn Triveline**
Field Office Director
101 W. Congress, Suite 4000
Chicago, IL 60605

**Tom Svoboda**
Corrections Chief of the McHenry
County Correctional Facilities
McHenry County Detention Center
2200 N. Seminary Avenue
Woodstock, IL 60098